## KISTLER v. THE STATE.

CRIMINAL LAW.—*Indictment.*—*Attempt to Extort Money by Threatening to Accuse of Immoral Conduct.*—*Blackmail.*—An indictment which properly lays the venue and time, and alleges that the defendant, naming him, had unlawfully and feloniously, verbally and orally, threatened to a certain person, naming him, that he, the defendant, would falsely accuse him, such person, of having had illicit, sexual intercourse with a certain woman, naming her, by causing such accusation to be printed and published in the public newspapers circulated among the citizens of a certain place, naming it, and by printing and circulating among such citizens handbills containing such accusation, with intent thereby to extort of such person money and other valuables of a description unknown to the grand jurors, all of such facts being specifically alleged, is good as a charge of an attempt to extort or gain from such person money or other valuable security by threatening to accuse such person of immoral conduct which, if true, would tend to degrade or disgrace him.

Kistler *v.* The State.

SAME.—*Evidence.*—*Mitigation of Punishment.*—*Former Imprisonment.*—Where a defendant is on trial for a crime, he may give evidence of the fact that, prior to such trial, he has already suffered imprisonment in the county jail or state-prison, whilst under arrest and awaiting trial for the charge upon which he is being tried or serving a previous, erroneous sentence, and the court or jury trying such cause must consider this evidence in mitigation of the punishment to be inflicted upon the defendant.

SAME.—*Instructions to Jury.*—*Character of the Defendant.*—On the trial of a defendant in a criminal prosecution, in connection with a charge to the jury that "evidence of good character is admissible in criminal cases, and, when proved, is to be taken into consideration, in determining the guilt or innocence of the accused", asked by the defendant to be given, it was error in the court to give the same modified by adding thereto the sentence, "but where the guilt is positively proved, then good character will not benefit the defendant."

SAME.—Proof of the previous good character of the defendant in a criminal prosecution is an ingredient to be considered, on the trial thereof, without reference to the apparently conclusive or inconclusive character of the evidence of the defendant's guilt.

From the Marion Criminal Circuit Court.

*B. K. Elliott* and *A. C. Ayres*, for appellant.

*J. E. Heller*, Prosecuting Attorney, and *C. A. Buskirk*, Attorney General, for the State.

NIBLACK, J.—The indictment in this case, which was returned into court on the 11th day of November, A. D. 1875, by the grand jury for Marion county, charged "that, on the 1st day of August, A. D. 1874, at and in said county and state, one John Kistler did, then and there, unlawfully and feloniously, verbally and orally, make threats to one Adam Hereth that he, the said Kistler, would falsely accuse the said Adam Hereth of certain immoral conduct which, if true, would tend to and would degrade and disgrace the said Hereth, to wit, that he, the said Adam Hereth, had been keeping one Nellie Deloss as his, the said Adam Hereth's, mistress, and had, at divers times and places, had sexual intercourse with and carnal knowledge of her, the said Nellie Deloss, not being lawfully married to her, the said Nellie Deloss, and having then and there a lawful wife living, which said charge

and accusation he, the said John Kistler, did, then and there, verbally and orally, to the said Hereth, threaten to publish, by having it printed in the public newspapers and prints, then and there in circulation among the people of said county and state, and by having the same printed in the form of circulars and handbills, and distributed among the people of said county, with intent, then and there and thereby, to extort, gain and obtain from him, the said Adam Hereth, chattels, moneys and valuable securities of him, the said Adam Hereth, the kind, character, description and value of said chattels, moneys and valuable securities being to said jurors unknown, and with intent, then and there and thereby, to gain other pecuniary advantages of said Hereth, the exact nature of which are to the grand jurors unknown and can not be given."

A motion to quash the indictment was entered and overruled, and the defendant excepted.

Upon a plea of not guilty, and a trial by a jury, there was a verdict of guilty, fixing the punishment at imprisonment for three years in the state-prison. The court, after considering and overruling a motion for a new trial, and properly noting exceptions, rendered judgment on the verdict.

The appellant assigns for error in this court,—

First. The overruling of the motion to quash the indictment.

Second. The overruling of the motion for a new trial.

This case was in this court before, on a previous indictment. See *Kessler* [*Kistler* ] v. *The State*, 50 Ind. 229. The indictment was then held to be defective, and the judgment on it was reversed on that account.

The indictment now before us is free from the objection held to be well taken to the former indictment, and is, we think, substantially sufficient under the statute. See 2 R. S. 1876, p. 449. We are, therefore, of the opinion

that the court did not err in overruling the motion to quash the indictment.

On the trial of the cause, the appellant offered to prove, in mitigation of any punishment which might be adjudged against or inflicted upon him, that he had already been imprisoned in the county jail and in the state-prison, for the period of eighteen months, for the same offence on which he was then on trial. The court refused to permit him to make this proof, and that refusal was one of the causes assigned for a new trial.

Our constitution provides that " cruel and unusual punishments shall not be inflicted," and that " all penalties shall be proportioned to the nature of the offence." See Constitution, art. I, sec. 16, 1 R. S. 1876, p. 23.

This provision of our constitution, which is so entirely in accord with the principles of natural justice and of an enlightened public policy, lays down certain fundamental rules, which are obligatory in the administration of public justice in this state.

According to the old law, all the jury had to do was to determine the question of guilt or innocence. It was the duty of the court, after a verdict of guilty, to declare the punishment which the law imposed. If any discretion was permitted as to the punishment, that discretion was exercised by the court alone. Circumstances, whether in aggravation or in mitigation, were considered by the court, when brought to its attention by the evidence.

We think it still the correct practice, where it devolves on the court to determine the punishment, either upon its own finding or on a plea of guilty, for it to hear evidence in aggravation or in mitigation, as the case may be, where there is any discretion as to the punishment.

In our present criminal code, it is enacted that, " When the defendant is found guilty, the jury must state in their verdict the amount of fine, and the punishment to be inflicted." 2 R. S. 1876, p. 404, sec 116.

This is, in substance, a reenactment of what has long

been the law in our state. Hence, our juries, in criminal causes, are not only required to determine the punishment, where there is a verdict of guilty, but are also invested with all the discretionary power in regard to such punishment that formerly belonged exclusively to, and which under certain circumstances is still exercised by, the courts. While punishing the guilty, they are, equally with the courts, required to see to it that no cruel and unusual punishments are inflicted, and that all penalties are proportioned to the nature of the offence.

In considering the question of the nature or the extent of the punishment, the juries are now fairly entitled to all the latitude which the courts have rightly exercised, in hearing evidence tending to enlighten them in the exercise of a sound judicial discretion. Where a person has already suffered some punishment on account of an alleged offence, we think he ought to be entitled to prove such punishment in mitigation of any further punishment which might be inflicted, on a subsequent trial for the same offence. Any other rule would make it hazardous for a person convicted on an erroneous judgment to ask for a reversal of the judgment after any considerable portion of the punishment has been inflicted. Any other rule would have the effect, in many cases, of withholding evidence proper to be considered in adjusting the punishment to the nature of the offence. So, where a defendant has been imprisoned in the county jail, on a criminal charge, previous to his trial, we think he is entitled to prove that imprisonment on the trial, as a circumstance to be considered by the jury in connection with the punishment, if he shall be found guilty.

We are of opinion, therefore, that the court erred in refusing to permit the appellant in this cause to prove his previous imprisonment in the county jail and in the state-prison, in mitigation of the subsequent punishment which was liable to be inflicted upon him, and as the punish-

ment imposed was greater than the minimum authorized in such cases, he may have been injured by this refusal.

After the evidence had been concluded, the appellant, amongst other things, requested the court to instruct the jury that "evidence of good character is admissible in criminal cases, and, when proved, is to be taken into consideration in determining the guilt or innocence of the accused." This instruction the court gave, but with the following modification; "But where the guilt is positively proved, then good character will not benefit the defendant." To this modification the appellant excepted, and the action of the court in making it was, also, assigned as one of the causes for a new trial.

It was formerly very generally held that the previous good character of the defendant, in a criminal proceeding, could only be taken into consideration in a doubtful case. A leading case, holding that view of the law, is that of *The United States* v. *Roudenbush*, 1 Bald. 514. In that case, there was evidence of the previous good character of the defendant. The court instructed the jury that evidence of the previous good, or the previous bad, character of the defendant, might, in certain contingencies, be considered by, and have weight with them, but that "when the evidence is clear, either way, character is out of the question."

In 3 Russ. Crimes, 300, it is said that "juries have generally been told that where the facts proved are such as to satisfy their minds of the guilt of the party, character, however excellent, is no subject for their consideration; but that when they entertain any doubt as to the guilt of the party, they may properly turn their attention to the good character which he has received. It is, however, submitted with deference that the good character of the party accused, satisfactorily established by competent witnesses, is an ingredient which ought always to be submitted to the consideration of the jury, together with the other facts and circumstances of the case. The nature of

the charge and the evidence by which it is supported, will often render such ingredient of little or no avail; but the more correct course seems to be, not, in any case, to withdraw it from consideration, but to leave the jury to form their conclusion, upon the whole of the evidence, whether an individual whose character was previously unblemished, has or has not committed the particular crime for which he is called upon to answer." See, also, 3 Greenl. Ev. 25, in which a like modern rule is laid down.

In the case of *Remsen* v. *The People*, 43 N. Y. 6, the charge to the jury in the court below was, in substance, very similar to the one we are considering. In reviewing that charge, the court of appeals say: "It was error to charge the jury that in any case evidence of good charater would be of no avail. There is no case in which the jury may not, in the exercise of a sound judgment, give a prisoner the benefit of a previous good character. No matter how conclusive the other testimony may appear to be, the character of the accused may be such as to create a doubt in the minds of the jury, and lead them to believe, in view of the improbabilities that a person of such character would be guilty of the offence charged, that the other evidence in the case is false or the witnesses mistaken. An individual accused of crime is entitled to have it left to the jury to form their conclusion upon all the evidence whether he, if his character was previously unblemished, has or has not committed the particular crime alleged against him." The court then cites Russ. Crimes, and Greenl. Ev., *supra*.

In the case of *Stover* v. *The People*, 56 N. Y. 315, the court held, that it was erroneous to charge, that "when there is direct evidence of the commission of a crime by a prisoner, then, good character goes for naught."

The weight of modern authority seems to be overwhelmingly in favor of the rule that proof of good character constitutes an ingredient to be considered by the jury, in all criminal cases, without reference to the apparently con-

conlusive or inconclusive character of the other evidence. See *State* v. *Henry*, 5 Jones, N. C., 65; *Rex* v. *Stannard*, 7 Car. & P. 673; 1 Whart. Crim. Law, 7th Ed., 644.

We are of the opinion that the court below also erred in making the modification it did to the instruction prayed for by the appellant, and in giving the instruction as thus modified.

Other questions are raised on the record and discussed by the appellant in his brief, but the conclusions at which we have arrived render it unnecessary for us to consider them as at present presented.

The judgment is reversed, and the clerk is directed to issue the proper notice to the warden of the state-prison.